## WYLIE *vs.* KELLY, Sheriff, &c.

M. & C. being indebted to W. sold him a bill of goods, the price of which was not applied by receipt or otherwise to the debt, nor was there any proof of an agreement that it should be so applied, but on the contrary it appeared from the bill of parcels that the purchaser was to give a note at ten months, payable to his own order ; *Held* that there was no payment of a part of the purchase money which would take the case out of the statute of frauds.

An agreement was made by M. & C. to sell a lot of goods in store to W. ; a record of the sale was made, in M. & Co.'s book of original entries ; a bill made out and delivered or sent to W. ; the goods were set out, by themselves, on one side of the store, and an account taken of them ; and W. consigned them to D. for sale on his account.    *Held* that there was sufficient evidence of delivery and acceptance to go to the jury ; and that the question of delivery should have been submitted to them.

THIS was an action to recover the possession of personal property consisting of 187 pieces of printed cotton flannels. The defendant justified the taking, as sheriff of the city and county of New York, under and by virtue of an execution issued out of the Marine court in an action brought by Vincent

Tilyou against Thomas Munroe and Thomas J. Davis; and alleged that the said goods, at the time they were levied on by him, were the property of the said Munroe and Davis, jointly, or of Thomas Munroe individually, or that they jointly or severally had an interest therein liable to levy and sale under execution. On the trial Edward N. Mason, a witness for the plaintiff, testified that in 1861 he was clerk to T. Munroe & Co., at 40 Barclay street, New York; Mr. Wylie had been carding goods for them eight or ten years; he resided at Paterson, New Jersey, and had a factory there; T. Munroe & Co., sent goods to Wylie to card, which afterwards went to the dyer or finisher; the account had always been in favor of Wylie; at the end of 1860 the balance was upwards of $6000; between December, 1860, and February, 1861, nothing had been paid of any consequence; the account was cash, and he drew at sight when he pleased; witness remembered no drafts after January 1, 1861; previous to to 1st of March, 1861, there was a transaction between the parties; on the 25th of February there was a sale of goods; a record was made in Thomas Munroe & Co.'s book. This book, called the waste book, was shown to the witness, and identified as belonging to T. Munroe & Co. On the fifty-third page was an entry, under date of February 25, 1861, of a sale of 875 pieces of cloakings and flannel cloth, amounting to 36,750 yards, to Geo. Wylie, the plaintiff, at ten months, for $5033.72. The witness being asked why Wylie did n't take the goods away, said,"I don't know; Wylie had no store in Paterson, the proper market for such goods is New York; Wylie bought all of this class of goods that we had in the store; they were set out on one side of the store by themselves, and an account taken; Wylie afterwards consigned them to Thomas J. Davis, agent, for sale; he was agent for his father; Mr. Davis has been there ever since, and is there now; while the goods remained in the store, a portion of them were taken by the sheriff; I think he took 180 pieces of the cloakings; these were printed cotton flannels,

Wylie *v.* Kelly.

used for lining and called cloakings." It was proved that
at the time of this sale, a bill of parcels was made out by
Munroe & Co., and delivered to Wylie, which stated the
terms to be ten months; note to his own order. It was
proved that the sheriff removed those goods from the others,
but left them in the store, and left a keeper with them.

The witness Mason, being cross-examined by the counsel for
the defendant, testified: "The sheriff levied on part of the
first lot mentioned in this bill; Mr. Wylie was in New York
on the 25th or 26th of February; Philip J. Munroe was the
book keeper of T. Munroe & Co.; I had nothing to do with
the ledger and journal; I had to do with the waste-book; I
don't know whether it is usual in trade to sell goods on credit
where the account is overdue; nothing was paid on account
at the time; T. Munroe & Co. had ceased to pay their debts;
they had not assigned at this time; they made an assignment
after this levy; they had ceased for several months before to
pay their notes in full; they had got accommodations; I
don't know when it was generally known outside that they
had stopped; I don't know of their buying any goods after
this; they made sales; I entered the employ of Mr. Davis
on the 1st April; Mr. Davis was there doing business before
that time; the first entry to Thomas J. Davis, agent, is
March 18th; I don't know the date of the assignment; it
was a week or two after the levy of the attachment in favor
of Tilyou." Davis had been one of the firm of T. Munroe &
Co. George Wylie, the plaintiff, being examined as a witness,
testified, that on the 1st of January, 1861, he received from
T. Munroe & Co. an account current which admitted a
balance of $6259.09, to be due to him from them. That on
the 25th of February he first spoke with Mr. Munroe about
these goods; he had not then heard they had failed; he knew
nothing of it till he got a letter telling him the goods were
levied on; that Mr. Davis told him he was going out of
business; Mr. Munroe said, if his securities turned out as
he expected, his estate could pay all liabilities; that they

Wylie *v.* Kelly.

still owed the plaintiff the balance of this account, $1200 and odd.

The defendant's counsel then put in evidence the judgment and execution under which the property was levied on by him. It was admitted by the plaintiff's counsel, that this execution was, on the fifth day of March, 1861, levied upon the goods replevied in this action, that is, upon 187 pieces of goods, part of those included in the bill of parcels, made out by T. Munroe & Co. to the plaintiff. It was then agreed between the counsel that in case the defendant was entitled to a verdict, the plaintiff having obtained the possession of the property at the commencement of the action, the amount of the value of the said goods to be assessed by the jury would be the amount of the judgment, sheriff's fees, and interest, in all $490.12, and that, if the jury found for the plaintiff, his damages would be six cents. The testimony being closed, the defendant's counsel requested the court to direct the jury to find a verdict for the defendant on the grounds: 1st. That there was no note or memorandum of the contract of sale by Munroe & Co. to the plaintiff subscribed by Munroe & Co., nor did the plaintiff accept or receive the goods, or any part thereof, before the levy by the defendant, nor did he, at the time of the alleged sale, pay any part of the purchase money. 2d. That there was no actual delivery of the goods attemped to be sold, or any continued change of possession thereof, and no evidence to go to the jury to rebut the presumption declared by the statute, that the sale was made with the intent to hinder or delay or defraud the creditors of Munroe & Co. The court granted the motion ; stating that the decision was made principally on the ground first taken by the defendant, to which decision the counsel for the plaintiff excepted. The jury thereupon, under the direction of the court, found a verdict for the defendant, and assessed the value of the property at $490.12. The court directed that the exceptions be heard in the first instance at the general term, and judgment be meanwhile suspended.

*Wm. Emerson,* for the plaintiff.

*Brown, Hall & Vanderpoel.* for the defendant.

CLERKE, J.  I. I think there was no payment for the goods, to take the case out of the statute.  Munroe & Co. undoubtedly were indebted in a large amount, to the plaintiff, at the time of the alleged sale.  There was no proof, direct and express, even that the price of the goods should be applied to the debt; and if there was, it would not be sufficient without also showing that the price was actually applied, by receipt or otherwise, to bring it within the exception of the statute.  So far from this, it would appear from the bill of parcels that the latter was to give a note at ten months, payable to his own order.

II. Was there evidence enough, relative to acceptance and delivery, to go to the jury?  There was an agreement to sell, on the 25th of February, 1861; a record of sale was made, in the book of original entries of Munroe & Co. of the same date; the goods were set out on one side of the store, by themselves, and an account taken of them, I presume, as goods of the plaintiff.  The witness Mason, the clerk of Munroe & Co., states, on being asked why the plaintiff had not taken away the goods, that he had no store in Paterson where he lived, and that the proper market for such goods was New York.  The same witness states that the plaintiff, after the goods were set apart, on one side of the store, consigned them to Davis, for sale.  The plaintiff in his evidence states that when he purchased he meant to send the goods to Kenny & Lockwood for sale; but he was overruled by Mr. Mason (the clerk) and Mr. Davis, who said that Kenny & Lockwood did not sell such goods.  Munroe & Co. said they would be able to get better prices, and would sell them on a commission of one per cent, if he would allow them to sell them, and he then consigned them to Davis for sale on their

premises, who accordingly "had gone on to sell these goods and others."

These were *acts* which may constitute a delivery. I am inclined to think it should have been left to the jury to say, under all the circumstances of the case, whether these acts did or did not amount to a delivery.

The verdict should be set aside, and a new trial ordered; costs to abide the event.

LEONARD, J. The case of *Gray* v. *Davis* (10 *N. Y. Rep.* 285) is controlling. The question of delivery &c. must be left to the jury. I concur with Judge Clerke.

SUTHERLAND, J. I should have concurred if the case had shown that the plaintiff requested the question of delivery to be submitted to the jury.

New trial granted.

[NEW YORK GENERAL TERM, May 2, 1864. *Leonard, Clerke* and *Sutherland,* Justices.]